UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ELISE LAMARTINA | CIVIL ACTION |
| VERSUS | NO. 21-1030 |
| CITY OF MANDEVILLE, ET AL. | SECTION "L" (4) |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### ORDER & REASONS

Before the Court is Defendants' Motion to Dismiss pursuant to Rule 12(b)(6). R. Doc. 37. Plaintiff Elise LaMartina ("LaMartina") opposes the motion. R. Doc. 38. After a review of the record, briefing, and applicable law, the Court now rules as follows.

**I.    BACKGROUND**

This cases arises out of alleged violations of Section 1983 by various Mandeville police and public officials against Elise LaMartina stemming from two police stops and the subsequent attempts by LaMartina to contest them. Because of the various named Defendants and lengthy history, a background of the underlying dispute is in order.

  a. The May 2, 2020 Stop

LaMartina alleges that on May 2, 2020, Defendant Stephen Baehr, an officer of the Mandeville Police Department ("MPD"), detained her in an unlawful traffic stop. R. Doc. 1 at 3. She alleges that, while she was driving to and nearly approaching her mother's house, Officer Baehr activated his vehicle's lights to stop her, and she promptly turned off the highway, into her mother's driveway. *Id.* LaMartina avers that "Defendant Baehr, aggressively and with his police revolver in-hand, stormed onto and across [her mother's] private property, violently approaching [LaMartina] as she opened her car door." *Id.* She alleges that Officer Baehr stated

that he stopped her because her car had no license plate. *Id.* at 4. According to LaMartina, her license plate had partially shifted out of view, and she says she explained this to the officer. *Id.* LaMartina asserts that, despite this apology and explanation, Officer Baehr "continued to harass, intimidate, and unlawfully detain" her. *Id.*

Soon after, four additional MPD officers allegedly came to her mother's property to also "harass, intimidate, and unlawfully detain" her. *Id.* LaMartina avers that these officers claimed to be investigating her for theft of the car she had been driving. *Id.* at 5. She describes she had been driving a vehicle owned by Timothy Howell and that she called Mr. Howell on the phone during the stop and that Mr. Howell "asked to speak to the officers to resolve their 'confusion' and confirm that his car was not stolen." *Id.* One officer allegedly refused to speak to Mr. Howell, while the remaining officers "continued to scurry about [Plaintiff's mother's] private property hoping to discover 'evidence' of other infractions and/or other potential crimes with which [Plaintiff] could be charged." *Id.* LaMartina alleges that, after some time, Officer Baehr spoke with Mr. Howell and subsequently cited Plaintiff for failing to display a license plate. *Id.* at 6. At this point, Plaintiff avers, all officers left the property. *Id.* Plaintiff asserts that the entire incident occurred "at least a mile outside of Mandeville's city limits, and clearly outside MPD jurisdiction." *Id.* at 4.

LaMartina claims that along with the citation, she was issued a summons to appear before Mandeville Mayor's Court on July 13, 2020[1] at Mandeville City Hall. *Id.* at 6. She says she returned to Florida with the intention of coming back to Mandeville to appear per this summons, but by that summer both states had shelter-in-place policies restricting travel and closing various public spaces, including Mandeville City Hall. *Id.* She alleges that she called the Clerk's office to find out whether her July 13, 2020 hearing would still move forward but

---

[1] The complaint says "July 13, 2021" but this appears to be a typo because all other surrounding dates are in 2020.

that they told her "they 'didn't know' whether court would be held, but that 'City Hall was closed.'" *Id.* She claims she was told there were no remote hearings or trials and the only remote service was to pay the fine, which she was attempting to contest. *Id.* LaMartina claims that she continued to reach the court to find out whether her proceeding would occur and heard nothing. *Id.*

### b. The September 29, 2020 Stop and Arrest

Later that year, LaMartina and her son drove to Louisiana and on September 29, 2020, they pulled into a Mandeville gas station where within minutes they were approached by Defendant Benjamin Cato of MPD. *Id.* at 7. LaMartina alleges that he lacked probable cause to stop or detain them, asked for their license and registration, and then a few minutes later Cato arrested LaMartina. *Id.* She alleges that he was physically abusive, grabbing her "arm and body and causing her great physical pain." *Id.* She claims that her son filmed "Defendant Cato's violent outburst hoping the Defendant would notice and stop brutalizing his mother." *Id.* at 8. Cato allegedly grabbed her son and handcuffed him and other officers then arrived to transport them in separate vehicles to the Mandeville police station. *Id.* LaMartina says she was eventually told that she was arrested pursuant to an outstanding warrant for her failure to appear at the closed Mandeville City Hall for the arraignment related to the Stephen Baehr incident on May 2, 2020. She was released with an arraignment date of January 11, 2021. *Id.*

### c. The Events of January 11, 2021 through April 16, 2021

LaMartina goes on to allege various offenses by Mandeville police and public officials related to these arrests and her subsequent efforts to contest them. She claims that Cato said he thought her son was Timothy Howell and that this "good faith mistake" is why he arrested him with LaMartina, which LaMartina characterizes as "smug" and indicative of "just enough MPD

training to know that there exists a 'good faith exception' to false arrests and imprisonment claims." *Id.* at 9. When she returned to Mandeville the following January, LaMartina alleges that "Magistrate Rachel Catalanotto, working in tandem with City Prosecutor, Defendant Bernard Plaia, offered to dismiss 'the second charge' if Elise pled guilty and paid a fine" relating to the license plate charge. *Id.* She claims this shows Mandeville's "policing-for-profit scheme" and that no one ever told her about a "second charge." *Id.* at 9-10.

She claims that she was cautioned against trial, encouraged to plead and pay, and that when she moved for discovery to prepare her own defense she was denied materials requested. *Id.* at 10. Further, she alleges that Defendant Plaia told Defendant Brant, the Mandeville City Clerk, not to provide anything to LaMartina without his permission and that on February 2, 2021, Brant "provided incomplete and/or 'doctored' responses" to LaMartina's requests, such as "a blank DVD allegedly containing video captured by body-cams and an unsigned, falsified, police report allegedly written by Defendant Baehr." *Id.* at 11. She claims continued obstruction to her access to various materials, specifically describing a saga to view the body-cam footage that at various times the Magistrate and/or City Prosecutor Plaia had conceded she was entitled to view. *Id.* at 11-15. She also describes how she contested that court's jurisdiction and their refusal to apply Louisiana Rules of Civil Procedure to her case. *Id.* at 14-15.

LaMartina states in her complaint that by this point she fully expects to be found guilty of the license plate charge as well as this unknown "second charge" which she says "remains unknown because neither public records nor discovery have been provided and Defendants Plaia and Brant, as well as the Magistrate, refuse to identify this charge, produce a bill of information, or identify any party named as an Unknown Defendant." *Id.* at 15.

d.  **Procedural History and the Present Federal Suit**

LaMartina brings claims against the following individuals and entities as Defendants: Mandeville Police Department Officers Gerald Sticker, Steven Baehr, and Benjamin Cato; Prosecutor Bernard Plaia; City Clerk Tammy Brant; City Attorney David Parnell; Mayor Clay Madden; the City of Mandeville; and the law firm Blue Williams, LLC. Id. at 2. Plaintiff initially filed her pro se complaint on April 30, 2021 in the Middle District of Florida; however, the case was transferred to this district on May 28, 2021 after a finding that venue was improper in the Middle District of Florida because the alleged events took place in this district. R. Docs. 1, 10. She asserts four categories of claims: (1) 4th and 14th Amendment claims and a § 1983 claim relating to the May 2, 2020 stop; (2) 4th and 14th Amendment claims and a § 1983 claim relating to the September 29, 2020 stop and arrest; (3) claims relating to the events between January 11, 2021 and April 16, 2021, including 5th and 14th Amendment claims as well as claims for "criminal misconduct including, without limit, fraud, harassment, intimidation, extortion, abuse of power, abuse of process, malicious prosecution, [and] negligent and/or intentional infliction of emotional distress;" and (4) "additional claims" such as that the Mandeville Police Chief and the Mandeville City maintained policies that were officially adopted and promulgated which violated her constitutional rights and negligent hiring/supervision claims. R. Doc. 1 at 17-22. She seeks damages for the violation of her rights under the 1st, 4th, 5th, and 14th Amendments, as well as pain and suffering, mental anguish, emotional distress, embarrassment, loss of life's enjoyment, and punitive damages. *Id.* at 23.

Instead of filing an Answer, Defendants filed a Motion to Dismiss for Failure to State a Claim. R. Doc. 21. Defendants argued that each of the police officers named is subject to qualified immunity; that the other public officials named are subject to prosecutorial, judicial, absolute, or qualified immunity; that LaMartina failed to raise any allegations against Blue

Williams; and that she failed to state a claim for which relief can be granted as to all defendants, such that all of LaMartina's claims should be dismissed at her cost. R. Doc. 21-1 at 2. This Court then ordered supplemental briefing on the status of the underlying state court proceedings, ordering the parties to file this briefing by April 22, 2022. R. Doc. 26. Because those underlying matters were at that time ongoing and, citing *Heck v. Humphrey*, 512 U.S. 447, 484 (1994), this Court stayed this matter until October 22, 2022, after which the parties could submit supplemental briefing informing the Court of the outcome of those underlying state proceedings. R. Doc. 29.

On February 1, 2024, Defendants filed a motion to lift the stay, informing the Court that the underlying proceedings have since resolved and this matter can move ahead. R. Doc. 35. Defendants describe that LaMartina appeared before Judge Martin E. Coady for a trial where she was prosecuted for the following violations: (1) drive/operate a vehicle in such an unsafe condition as to endanger any person/property; (2) simple flight from an officer; (3) failure to give notice of change of address within 10 days; and (4) failure to register vehicle in time allowed, all stemming form the May 2, 2020 stop. R. Doc. 35-1 at 2. They state that Judge Coady found her not guilty of simple flight from an officer but guilty of the other three charges. *Id.* She was sentenced to pay a fine or spend three days in jail and she was ordered to appear on or before December 19, 2023 to pay costs and fines. *Id.* at 2-3. However, Defendants claim she failed to appear and there is presently an outstanding arrest warrant related to this failure. *Id.* Because the underlying proceedings had final dispositions, and there was no filed opposition to Defendants' motion to lift stay in this matter, this Court lifted the stay on February 29, 2024 and Defendants re-urged their Motion to Dismiss pursuant to Rule 12(b)(6) on April 24, 2024. R. Docs. 36, 37.

## II.   PRESENT MOTION

Defendants filed the instant motion urging the Court to dismiss LaMartina's complaint. R. Doc. 37. They argue much of the same as they did in their first 12(b)(6) motion: that the police officers are entitled to qualified immunity; that the public officials like Plaia, Brant, and Parnell are entitled to prosecutorial, absolute, judicial, and/or qualified immunity; that no facts at all were pled as to Blue Williams LLC; and that LaMartina has failed to set forth claims for constitutional violations. *Id.* They also argue that *Heck v. Humphrey* precludes this suit, pointing out that LaMartina was convicted of three of the four counts brought against her by St. Tammany Parish in November 2023. R. Doc. 37-1 at 14-15. Defendants argue that the time for filing an appeal has since run without any action by LaMartina and therefore *Heck* requires a dismissal of her complaint as a matter of law. *Id.*

In opposition, LaMartina argues that the minute entry from the trial states the date of her underlying offenses for those convictions as May 2, *2021*, exactly one year after this stop, and therefore Heck cannot apply to his federal suit which deals with alleged violations that occurred on May 2, *2020*. R. Doc. 38 at 4-5; Minute Entry, R. Doc. 38-1. She calls attention to the timeline of these charges across various courts, from Mandeville Mayor's Court to St. Tammany Parish, to argue that this entire saga was manufactured to create a *Heck* problem. Specifically, she notes that Defendants' first motion to dismiss in this case, R. Doc. 21, was filed on December 9, 2021, the day before St. Tammany brought these four charges against her, and that in their supporting memorandum, Defendants cite these pending charges as support for dismissing her premature federal action. R. Doc. 38 at 3. She therefore alleges that Defendants "strategized that a conviction in St. Tammany Parish would expose the instant case to dismissal under *Heck v. Humphrey*" and thus, "[t]o that end, nearly two years after all relevant events

7

(occurring between May 2, 2020 and April 30, 2021) and nearly a year after this action was filed, the Defendants urged the St. Tammany Parish District Attorney to initiate various traffic violations against your Plaintiff." *Id.* at 2. Even if Heck were to apply, LaMartina argues that a finding in this matter in her favor would not cast doubt on convictions that stem from an offense date of May 2, *2021*, one year after the events underlying the instant suit, or any time other than that date. *Id.* at 4. She claims she did not appeal that state court conviction because any such conviction relating to conduct on May 2, 2021 "is inconsequential and moot" and she questions the state court's "rationale for finding a Florida licensee and resident guilty of failing to notify Louisiana of any address change." *Id.*

LaMartina argues that qualified immunity should not apply in this case to any of the officials who claim it because all of their actions were beyond the scope of their employment and/or violations of clearly established law. *Id.* at 6-11. For example, she alleges that the City of Mandeville and the MPD officers knew or should have known that they had no power to enforce the Louisiana statute with which she was cited and further that Mandeville Mayor's Court had no power to adjudicate such a charge. *Id.* at 7. She says Cato's actions at the gas station on September 29, 2020 constituted "assault and battery" and "excessive force" both as to her arrest and her son's arrest for "behaving badly." *Id.* at 9. She alleges that City Prosecutor Plaia's actions don't entitle him to quasi-judicial immunity because he pursued charges he knew he did not have authority to prosecute and thwarted her attempts to obtain documents and materials in preparing her defense. *Id.* at 10. Last, she says Defendants Brant and Parnell (Clerk and Mandeville City Attorney) acted in concert with the other Defendants to thwart her attempts to obtain these materials, which she says are not "integral or intertwined with the judicial process or within the course and scope" of their employment and therefore no immunity

should attach to them. *Id.* at 11. She concludes that the facts in her complaint, if taken as true, are sufficient to plead plausible claim for relief as requested. *Id.* at 12.

### III. APPLICABLE LAW

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556. A claim is plausible on its face when the plaintiff has pled facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 570. Although a court must liberally construe the complaint in light most favorable to the plaintiff, accept the plaintiff's allegations as true, and draw all reasonable inferences in favor of the plaintiff, *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996), courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Arias-Benn v. State Farm Fire & Cas. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

Civil claims that cast doubt on a prior criminal conviction must be dismissed under *Heck v. Humphrey*, 512 U.S. 477 (1994). In that case, the Supreme Court found that civil actions for alleged civil rights violations that attack the validity of state confinement that have not been reversed, expunged, invalidated or called into question by a federal court's issuance of a writ of habeas corpus, is not cognizable under §1983. *See Hood v. Comm'r Foil*, No. 13-5853, 2013 WL 6174614, at *4 (E.D. La. Nov. 21, 2013). The Fifth Circuit further holds that *Heck* is applicable in both civil actions for monetary damages and where plaintiffs seek injunctive

relief. *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998).

**IV.   DISCUSSION**

The Court can begin by swiftly dismissing claims alleged against Defendant Blue Williams LLC, as LaMartina failed to allege any facts whatsoever in her complaint against the firm. Next, while LaMartina argues that the state court convictions she sustained related to conduct on May 2, 2021, the transcript of the trial indicates otherwise, as it discusses at length the conduct of May 2, 2020. *See generally* Trial Transcript, R. Doc. 37-4 (discussing the date and conduct throughout). Accordingly, the Court can dispense with the argument that LaMartina's convictions stem from events from May 2, *2021* and considers the dates in the minute entry indicating "2021" as a clerical error.

Next, the Court finds that *Heck* precludes the instant suit and therefore need not reach the arguments on qualified immunity. As the law stands in this circuit, *Heck* is binding precedent on this Court. Further, to avoid a *Heck* dismissal here, LaMartina could have challenged her convictions in a number of ways, and her suspicion of a *Heck* motivation here is not a new argument: at trial, she raised this concern when she took the stand. R. Doc. 37-4 at 40:3-40:10 ("And, of course, we all know that that's because they wanted to use the Heck Doctrine to get the Federal case dismissed."). LaMartina nevertheless declined to appeal or otherwise challenge her conviction, as required by *Heck*, describing such efforts as "inconsequential and moot." R. Doc. 38 at 4.

The underlying convictions would be collaterally attacked if this Court finds favorably for LaMartina in this case, as it challenges the constitutionality of her arrest on May 2, 2020 and the events that stem from it, including her arrest on September 29, 2020 for her failure to appear for the May 2, 2020 citation, and the subsequent attempts to prosecute and fight these

charges in Mandeville. That the St. Tammany District Attorney ultimately brought charges relating to this conduct, not the Mandeville City Attorney, does not change this analysis.

Accordingly, for the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**.

New Orleans, Louisiana, this 14th day of May, 2024.

_____
UNITED STATES DISTRICT JUDGE